

**ORDERED in the Southern District of Florida on November 14, 2022.**

Robert A. Mark, Judge
United States Bankruptcy Court
_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | CASE NO. 19-15907-RAM |
| | CHAPTER 13 |
| CARLA R. MOSLEY, | |
| Debtor. | |

**ORDER OVERRULING, IN PART,
OBJECTION TO MOTION TO MODIFY, SETTING
FILING DEADLINE, AND SETTING FURTHER HEARING**

The Court conducted a hearing on November 8, 2022, on Debtor's Motion to Modify Confirmed Chapter 13 Plan (the "Motion to Modify") [DE# 95]. The Trustee filed an objection [DE# 90], arguing that the Debtor understated her disposable income in the Amended Form 122C-2, Chapter 13 Calculation of Your Disposable Income ("CMI Form"), that she filed on June 20, 2022 [DE# 75].

Here are the key facts. The Debtor filed her petition on May 2, 2019, and the Court confirmed her Fourth Amended Plan (the "Plan") [DE# 42] on September 24, 2019 [DE# 49]. The Plan stripped off a lien recorded by the Misty Lake Condominium Association (the "Association"), provided for $345 monthly payments to the Association for postpetition regular payments, and provided for monthly payments of $245.80 to the unsecured creditors in months 31 to 60 of the Plan. The Association is, by far, the largest unsecured creditor.

The Plan included what is commonly referred to in our chapter 13 practice as income verification language ("IVL"), requiring the Debtor to provide copies of her tax returns to the Trustee each year during the pendency of the case. The IVL provision also requires the Debtor to provide the Trustee with verification of her disposable income if her income increases by more than 3% over a previous year's income. The Debtor is a schoolteacher who received a $12,000 raise in 2021. Because the raise exceeded 3%, it triggered her obligation to verify her disposable income.

The Debtor did not initiate a modification of her plan to increase her payments to the unsecured creditors. Rather, she sought to modify her plan to address the Association's Notice of Payment Change [DE# 57], which advised the Debtor of an increase in her monthly Association fees.

2

The Debtor's efforts to modify the Plan to increase her monthly regular payments to the Association have included several proposed modified plans, most recently a proposed Sixth Modified Plan (the "Proposed Modified Plan") [DE# 94].  Neither the Association nor the Trustee object to the provision in the Proposed Modified Plan increasing the regular monthly payment to the Association from $345 to $437.83 to comply with the Notice of Payment Change.  Both the Trustee and the Association do take issue with the Debtor's failure to increase the monthly payment to the unsecured creditors now that her income has increased.

To confirm (or later modify) a plan, § 1325(b)(1)(B) obligates a debtor to devote his or her "projected disposable income" to unsecured creditors.  That amount is determined in the CMI Form.  In calculating monthly disposable income, a debtor's allowable expenses in certain categories are limited to the National Standards and Local Standards published by the Internal Revenue Service (the "IRS Standards")[1]

So, here is the issue:  In completing an amended CMI Form to calculate disposable income for her modified plan, must the Debtor use the IRS Standards applicable on the petition date or may she calculate her expenses using the IRS Standards (with higher numbers

---

[1] As part of the unwieldly and non-reality based "means test" imposed by Congress in the Bankruptcy Abuse Protection and Consumer Protection Act of 2005 ("BAPCPA"), § 1325(b)(3) requires what are commonly referred to as above median income debtors to calculate their expenses under § 707(b)(2) which, in turn, refers to the IRS Standards.

in various categories) applicable at the time of the proposed modification?

## Discussion

Despite this somewhat lengthy slog through the intricacies of the means test, the Court finds that the answer is simple. The Trustee has not cited, and the Court is unaware of, any statutory provision or applicable case law mandating use of the IRS Standards in effect on the petition date. Logic and fairness (not always a choice under BAPCA) compel the opposite conclusion. If the Debtor's increased current income may obligate her to increase her payments to unsecured creditors, the Debtor must be allowed to calculate her disposable income using current expenses. This may include an increase in actual current expenses, which may be used in some categories, and an increase in the IRS Standards that must be used in other categories.

The following example may not be applicable here because the Debtor's sizable raise may still yield an increase in disposable income. But to prove the point, suppose a hypothetical debtor gets a 5% raise. Also suppose that the IRS Standards also go up by 5% based upon inflation. It would be grossly unfair to calculate the debtor's disposable income using the lower numbers in the IRS Standards applicable on the filing date. Doing so would result in an artificial increase in disposable income requiring higher plan

payments for a debtor who had no extra money to afford the higher payments. That just wouldn't make sense.

### Further Proceedings

At the November 8th hearing, Debtor's counsel acknowledged that the Debtor would need to further amend her CMI Form, even if the Court agreed to allow her to use the current IRS Standards. The Debtor also agreed to use the IRS Standards applicable on January 1, 2022. Therefore, it is –

**ORDERED** as follows:

1. The Court reserves ruling on the Motion to Modify.

2. The Trustee's Objection to the Motion to Modify is overruled to the extent that the Objection argued that the Debtor must use the IRS Standards applicable on the petition date in her amended CMI Form.

3. The Debtor must file an Amended CMI Form by <u>November 28, 2022</u>, using the IRS Standards in effect on January 1, 2022.

4. The Court will conduct a further hearing on the Motion to Modify on **December 13, 2022** at **9:00 a.m.** The hearing will be conducted by video conference using the services of Zoom Video Communications, Inc.

2. For instructions regarding the video conference, please refer to the General Procedures for Hearings By Video Conference on Judge Mark's web page on the Court's website, https://www.flsb.uscourts.gov/judges/judge-robert-mark

3.  To register for the video conference, click on the following link or manually enter the following link in a browser:

https://www.zoomgov.com/meeting/register/vJItdOyvrjIvGmlCDrtIqCZrs_TzvTdyAJ0

###

COPIES TO:

Rachamin Cohen, Esq.
Charles Otto, Esq.
Nancy K. Neidich, Trustee